IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD G. SAGER,

        Petitioner,

   v.

GUY HALL,

        Respondent.

Civil No. 05-1812-AS

FINDINGS AND RECOMMENDATION

    ANTHONY D. BORNSTEIN
    Assistant Federal Public Defender
    101 S.W. Main Street
    Suite 1700
    Portland, OR  97204

        Attorney for Petitioner

    HARDY MYERS
    Attorney General
    JONATHAN W. DIEHL
    Assistant Attorney General
    Department of Justice
    1162 Court Street N.E.
    Salem, OR  97301

        Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ASHMANSKAS, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 *pro se*. For the reasons that follow, Petitioner's request for an evidentiary hearing should be DENIED, the Petition for Writ of Habeas Corpus should be DENIED, and this action should be DISMISSED.

<u>**BACKGROUND**</u>

In early 2001, Michael Honeycutt was living on a Polk County farm owned by Jim Goddard. Several other people, including Petitioner and his girlfriend, also stayed at the farm off and on at that time. While Honeycutt lived at the farm, he did various odd jobs for Mr. Goddard. Goddard's wife, Jacqueline Goddard, was afraid of Honeycutt and asked him to leave the farm several times, but he did not. At the time, Honeycutt had four outstanding warrants for his arrest and a long criminal history, including a seven-year stint in the Oregon State Penitentiary.

Petitioner know Honeycutt from prison. The two of them were "stand-offish," but conversed civilly. On the night of March 7 or 8, 2001, Honeycutt saw Petitioner going through Jim Goddard's car. This made Honeycutt, who was actively using methamphetamine and was still awake from earlier consumption of the drug, angry. The next morning, Honeycutt tried to instigate a fight with Petitioner

over a cigarette lighter.  Petitioner did not engage in a fight, and instead left the property.

   Later that day, David Van Lieu received a call from Robert Rhoades, who asked Van Lieu to obtain a gun for Petitioner. Petitioner got on the phone and affirmed his request for a gun. Petitioner said Honeycutt was "flipping out," and that Petitioner was going to use the gun to run Honeycutt off the Goddard property.  Van Lieu gave his .22 caliber pistol to Petitioner.

   That afternoon, Honeycutt was working on a truck at the Goddard farm.  According to Honeycutt, he had nothing in his hands when Petitioner arrived and walked up the driveway.  Petitioner approached with his hands at his side, said "Hey, punk," and raised his right hand and shot Honeycutt twice in quick succession.  At first, Honeycutt did not realize he had been shot, but once he realized he had been, he turned and ran into the house.

   Honeycutt checked his injuries in the house.  He applied antibiotic ointment and bandaged himself.  Over the next couple of weeks he rested and recovered from his injuries.  Honeycutt did not go to the hospital or contact police because he was trying to stay true to the "convict code."

   About six weeks after the shooting, Polk County detectives got wind of the incident and asked Honeycutt what happened. Initially, Honeycutt denied being shot.  After he was arrested on

an outstanding warrant and taken to jail, Honeycutt told the
detectives what happened. At the request of the detectives, Dr.
Chris Edwardson examined Honeycutt.

A Polk County grand jury indicted Petitioner on charges of
Attempted Murder with a Firearm, Assault in the First Degree,
Assault in the Second Degree, and Felon in Possession of a
Firearm. At arraignment, on Petitioner's suggestion the judge
appointed attorney Thomas Bostwick to represent Petitioner.
Bostwick had previously worked as a prosecutor with the Marion
County District Attorney's office, at a time the office prosecuted
Petitioner for an unrelated crime. Petitioner volunteered he
would "waive any kind of conflict of interest that I have had
while [Bostwick] was a prosecutor in Marion County." Resp. Exh.
102, p. 9. The judge appointed Bostwick and told Petitioner that
"[i]f [Bostwick] thinks there may be a problem or you two folks
think there would be a problem, then we may have to reassess
that." Id. at pp. 10.

Petitioner's case proceeded to a jury trial. At a pre-trial
hearing, Petitioner's counsel objected to leg restraints
corrections officers were requiring Petitioner to wear. The
restraints were designed to be worn underneath clothing, where
they would not be visible to the jury. Petitioner initially
refused to wear the restraints underneath his pants, citing
discomfort.

At the hearing, Polk County Sheriff's Office Sergeant Cheselka testified that the leg restraints were necessary because of the serious charges, the "high profile" nature of the case, and the nature of the witnesses (many of whom were in custody or had prior criminal records) who would be called at trial. Cheselka admitted he was unaware of any previous escape attempts by Petitioner, but expressed his belief that Petitioner feared for his life if he re-entered the state corrections system. Cheselka also stated:

> . . . Besides being the policy of the sheriff's office and Corrections Division, due to the nature of the charges and the high profile case that we have, as Mr. Fisher, the D.A.'s Office mentioned, for the safety and security of my staff, me and my staff and all the personnel in this courtroom that we will have to protect, due to the nature of these charges, due to the nature of the witnesses that will be called -- we're not so much concerned as for [Petitioner] as we are with everybody else that could have access to the courtroom and who could also maybe assist in some type of a ploy or plot to get him out. And so with all of those factors into it, then that's the decision that was made and that's why we've done it. It has been consistent with everything they've done in the past.

Resp. Exh. 111, pp. 8-9.

Although he expressed his opinion that the leg restraints were "a little bit of an overkill," the trial judge ruled that Petitioner would wear them during trial. Id. at pp. 20, 21. After initially waiving his right to be present, Petitioner met with his attorney, and appeared back in court with the restraints underneath his pants. Id. at p. 23.

6 - FINDINGS AND RECOMMENDATION -

At trial, Petitioner admitted shooting Honeycutt. He defended his case and his actions as undertaken in self-defense, and also raised the defense of choice of evils. Petitioner testified that on the morning in question Honeycutt had previously pointed an unloaded sawed-off shotgun at Petitioner and pulled the trigger. Petitioner decided to get a gun to run Honeycutt off the property. Petitioner testified that when he returned to the property with the gun, Honeycutt who was holding an axe, walked toward Petitioner and threatened him. Petitioner first fired into the ground, but when Honeycutt continued to advance and raised the axe over his head, Petitioner fired twice at Honeycutt. Honeycutt dropped the axe and ran toward the house.

After three days of trial, the jury found Petitioner not guilty of Attempted Murder, but convicted him on the remaining three charges. Petitioner appealed, but the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. State v. Sager, 199 Or. App. 417, 112 P.3d 1204, rev. denied, 339 Or. 475, 124 P.3d 1248 (2005). Petitioner did not seek state post-conviction relief.

On December 2, 2005, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in this court alleging numerous grounds for relief. The court appointed counsel, who addresses three claims for relief in the memorandum in support of the petition:

(1) Petitioner was denied his right to conflict-free counsel, as the attorney appointed to represent him at trial and sentencing had participated in the prosecution of Petitioner in a prior Marion County case; (2) the state trial judge denied Petitioner his right to participate in his trial unburdened by physical restraints in violation of the Due Process Clause; and (3) the state presented insufficient evidence of "serious physical injury" to support the conviction for the charged offense of Assault in the First Degree.  In the alternative to granting a writ of habeas corpus, Petitioner asks this court to conduct an evidentiary hearing.

## LEGAL STANDARDS

This Court may grant a writ of habeas corpus only if the state court proceeding: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  See 28 U.S.C. § 2254(d).  Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court.  Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004), cert. denied, 546

U.S. 963 (2005). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. <u>Rice v. Collins</u>, 546 U.S. 333 (2006). In conducting its review, the Court "look[s] to the last-reasoned state-court decision." <u>Van Lynn v. Farmon</u>, 347 F.3d 735, 738 (9th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1037 (2004).

Section 2254(d)(1) consists of two alternative tests, *i.e.*, the "contrary to" test and the "unreasonable application" test. <u>See</u> <u>Cordova v. Baca</u>, 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir.) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 413-414 (2000)), <u>cert. denied</u>, 540 U.S. 968 (2003).

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case.'" <u>Van Lynn</u>, 347 F.3d at 738 (quoting <u>Clark</u>, 331 F.3d at 1067). Under the " 'unreasonable application clause ... a federal habeas court may not issue the writ simply because that court

9 - FINDINGS AND RECOMMENDATION -

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly ... [r]ather that application must be objectively unreasonable.'" <u>Clark</u>, 331 F.3d at 1068 (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003)). When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." <u>Cordova</u>, 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." <u>Lambert</u>, 393 F.3d at 978; <u>see also Taylor v. Maddox</u>, 366 F.3d 992, 999 (9th Cir.) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable"), <u>cert. denied</u>, 534 U.S. 1038 (2004). Section (d)(2) "applies most readily to situations where a petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, ... that the process employed by the state court is defective, ... or that no finding was made

by the state court at all." <u>Taylor</u>, 366 F.3d at 999 (citations omitted).

In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues ... [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" <u>Lambert</u>, 393 F.3d at 972 (quoting <u>Taylor</u>, 366 F.3d at 1000). Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court."[1] <u>Taylor</u>, 366 F.2d at 1000.

---

[1] Under section 2254(e) "a determination of a factual issue made by a State court shall be presumed to be correct." The "AEDPA spells out what this presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error.... Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once" it is found that the state court reasonably determined the facts in light of the evidence presented in the state proceeding. *Taylor*, 366 F.3d at 1000.

**DISCUSSION**

I.    **Insufficient Evidence**

Petitioner alleges the state violated his due process rights by failing to present sufficient evidence to support the conviction for Assault in the First Degree.  He argues the evidence was insufficient to support a finding that he caused serious physical injury to the victim.

The Due Process Clause of the Fourteenth Amendment protects the "accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  In reviewing the sufficiency of evidence to support a petitioner's state conviction, a federal habeas court must determine whether, after considering all of the evidence in the light most favorable to the prosecution, a rational trier of fact could have found each of the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Walters v. Maas, 45 F.3d 1355, 1358 (9th Cir. 1995).  The court is to look to state law to determine the elements of the crime, and the appropriate definition or parameters of such elements.  Jackson, 443 U.S. at 324.

If the evidence is unclear or would support conflicting inferences, a presumption arises that the trier of fact resolved

any such conflicts in favor of the prosecution.  <u>Payne v. Borq</u>, 982 F.2d 335, 338 (9th Cir.), <u>cert. denied</u>, 510 U.S. 843 (1993). The reviewing federal court must respect the province of the jury to determine credibility of witnesses, resolve evidentiary conflicts, and draw inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict.  <u>Walters</u>, 45 F.3d at 1358.

Upon an independent review of the record, viewing the evidence in the light most favorable to the prosecution, this court finds that the jurors rationally could have found Petitioner guilty of Assault in the First Degree.  Under Or. Rev. Stat. § 163.185(1), "[a] person commits the crime of assault in the first degree if the person intentionally causes serious physical injury to another by means of a deadly or dangerous weapon." Serious physical injury "means physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."  Or. Rev. Stat. § 161.015(8).

When Dr. Edwardson testified, the prosecutor asked if, based on the nature of the gunshot wound and where the victim was struck, there was a substantial risk that he could have been killed. Resp. Exh. 112, p. 51.  The doctor answered, "very."  <u>Id</u>. When asked to explain, the Dr. Edwardson stated:

Well, it's — I think it quite apparent that if a bullet had hit any one of those rib spaces and gone in the chest cavity instead of along the chest cavity, he would have hit lung which immediately would have caused lack of integrity in the lung so it could cause a condition called pneumothorax where as you breathe in, you leak air, and then eventually you can't breath and you die from the lack of ability to expand the lung. And that's the first risk.

The second risk is that you can bleed to death for lacerating the lung or could enter the heart and pop a hole in the heart and bleed to death. The major vessels all go through here. The spinal cord runs along the back of the chest. The list goes on. Many vital organs are all protected by the chest cavity.

<u>Id</u>. at pp. 51-52. Given this testimony, which was uncontradicted by Petitioner, a rational trier of fact could have found a substantial risk of death. Accordingly, the state court decisions denying relief on this claim were not contrary to or an unreasonable application of clearly established federal law.[2]

**II.  <u>Conflict With Counsel</u>**

Petitioner also alleges he was denied the right to conflict-free counsel, as the attorney who represented him at trial had

---

[2]Respondent also argues Petitioner procedurally defaulted this claims because he did not raise it as a federal claim in his direct appea. Under 28 U.S.C. § 2254(b)(2), the court may directly address the merits of a habeas petition, without considering whether a petitioner's claims were properly exhausted in the state courts, "when it is perfectly clear that the applicant does not raise even a colorable federal claim." <u>Cassett v. Stewart</u>, 406 F.3d 614, 623-24 (9th Cir. 2005). Because Petitioner's insufficiency of the evidence claim is not colorable, the issues of exhaustion and procedural default need not be addressed.

participated in a prior prosecution of Petitioner in another county.

Generally, Sixth Amendment ineffective assistance of counsel claims require the Petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). When, however, assistance of counsel has been denied entirely or during a critical stage of the proceedings, the likelihood that the verdict was affected is high and, therefore, prejudice is presumed and need not be demonstrated. Mickens v. Taylor, 535 U.S. 162, 166 (2002); United States v. Cronic, 466 U.S. 648, 658-59 (1984). "Circumstances of such magnitude may 'arise when the defendant's attorney actively represented conflicting interests.'" Earp v. Ornoski, 431 F.3d 1158, 1182 (9th Cir. 2005) (quoting Mickens, 535 U.S. at 166), cert. denied, 126 S.Ct. 2295 (2006).

Under *Mickens*, an "actual conflict" is not "something separate and apart from an adverse effect." Mickens, 535 U.S. at 172 n.5. Rather, "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Id. Moreover, as the Ninth Circuit described it, "[t]he Mickens Court specifically and explicitly concluded" that prior jurisprudence concerning attorney conflicts were "limited to joint representation," and any extension outside

the joint representation context "remained, 'as far as the jurisprudence of [the Supreme Court was] concerned, an open question.'" Earp, 431 F.3d at 1184 (quoting Mickens, 535 U.S. at 176).

Petitioner argues an actual conflict of interest occurred because his court-appointed counsel previously worked as a prosecutor, and was involved in a prior prosecution of Petitioner. To date, however, the Supreme Court has not extended Mickens' actual conflict jurisprudence to include such a situation. Accordingly, no "actual conflict" supporting a presumption of prejudice occurred in Petitioner's case.

Because no "actual conflict" was present, Petitioner must demonstrate prejudice in order to justify habeas relief. Hindman v. Lampert, — F.Supp.3d —, 2007 WL 1053255 *6 (D. Or., April 6, 2007) (citing Strickland, 466 U.S. at 687). Petitioner failed to demonstrate, either in state court or here, that his trial counsel's prior employment as a prosecutor resulted in prejudice.[3] Accordingly, the state appellate courts' denial of relief on this claim was neither contrary to, nor an unreasonable application of clearly established federal law as determined by United State

---

[3]Indeed, Petitioner never raised an ineffective assistance of counsel claim in state court, as he never sought state post-conviction relief.

Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief.

### III. <u>Restraints at Trial</u>

Petitioner also argues the trial court's decision compelling him to wear leg restraints violated his right to due process. Visible shackling of a criminal defendant during trial "undermines the presumption of innocence and the related fairness of the factfinding process" and "'affront[s]' the 'dignity and decorum of judicial proceedings that the judge is seeking to uphold.'" <u>Deck v. Missouri</u>, 544 U.S. 622, 630-31 (2005) (alteration in original) (quoting <u>Illinois v. Allen</u>, 397 U.S. 337, 344 (1970)).  The Supreme Court has held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." <u>Id</u>. at 629.  Visible restraints are therefore not permitted unless the trial court finds that they are necessary while "tak[ing] account of the circumstances of the particular case." <u>Id</u>. at 632.

Visible restraints do not, however, violate a defendant's due process rights if their use is justified by an essential state interest specific to the defendant on trial, such as the interest in courtroom security. <u>Larsen v. Palmateer</u>, — F.3d —, 2008 WL 375203 (9th Cir., Feb. 13, 2008) (citing <u>Deck</u>, 544 U.S. at 624).

17 - FINDINGS AND RECOMMENDATION -

Before allowing visible restraints, the trial court must be persuaded by compelling circumstances that the restraint is necessary to maintain the security of the courtroom. <u>Gonzalez v. Pliler</u>, 341 F.3d 847, 902 (9th Cir. 2003).

Even if a defendant has been unconstitutionally shackled, the court must nonetheless "assess whether this error 'had substantial and injurious effect or influence in determining the jury's verdict.'" <u>Larson</u>, 2008 WL 375203 *4 (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (additional citations omitted). As explained by the Ninth Circuit, to determine whether the imposition of physical restraints constitutes prejudicial error, courts have considered:

> [T]he appearance and visibility of the restraining device, the nature of the crime with which the defendant was charged and the strength of the state's evidence against the defendant." <u>See</u> <u>Dyas v. Poole</u>, 317 F.3d 934, 937 (9th Cir. 2003) (per curiam). "[T]he greater the intensity of shackling ... the greater the extent of prejudice," because elaborate physical restraints are more likely to create the appearance of the defendant's dangerousness. <u>See</u> <u>Spain v. Rushen</u>, 883 F.2d 712, 722 (9th Cir. 1989).

<u>Larson</u>, 2008 WL 375203 *4. Where, however, the restraints are not visible to the jury, there is no prejudice. <u>United States v. Howard</u>, 480 F.3d 1005, 1012 (9th Cir. 2007).

The leg restraints employed in this case were designed to be worn under the defendant's pant legs. Resp. Exh. 111, p. 12. Petitioner initially insisted on wearing the restraints on the

outside of his pant legs. Id. at p. 4. After an extensive colloquy on the issue of restraints outside the presence of the jury, Petitioner ultimately put them under his pants. Id. at 23. There is no evidence on the record that the existence of the restraints was ever made known to the jury, or the that the restraints interfered with Petitioner's ability to communicate with counsel or testify on his own behalf. Accordingly, assuming without deciding that the trial court's decision to require braces violated Petitioner's due process rights, Petitioner has not established that the presence of the restraints "had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623. Petitioner is not entitled to habeas corpus relief on this claim.

**IV.  Request for Evidentiary Hearing**

Finally, Petitioner seeks an evidentiary hearing on the conflict of interest and physical restraint claims. As noted, however, upon review of the state court record, this court concludes Petitioner is not entitled to the habeas relief requested. Accordingly, Petitioner's request for an evidentiary hearing is denied. See Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (where the record in the case precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## **RECOMMENDATION**

For these reasons, Petitioner's request for an evidentiary hearing should be DENIED, the Petition for Writ of Habeas Corpus should be DENIED, and a judgment of DISMISSAL should be entered.

## **SCHEDULING ORDER**

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due March 19, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this  4th  day of March, 2008.


        /s/ Donald C. Ashmanskas
        Donald C. Ashmanskas
        United States Magistrate Judge